UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ABBIE GARCIA, BRANDON | § | No. SA:14–CV–985–DAE |
| PONTIOUS, and ORIN HUGHES, | § | |
| individually and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| TWC ADMINISTRATION, LLC, | § | |
| d/b/a TIME WARNER CABLE, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE
ACTION AND AUTHORIZATION FOR NOTICE

Before the Court is a Motion for Conditional Certification of a

Collective Action and Authorization for Notice filed by Plaintiffs Abbie Garcia,

Brandon Pontius, and Orin Hughes, individually and on behalf of all others

similarly situated (collectively, "Plaintiffs"). (Dkt. # 9.) On April 15, 2015, the

Court heard oral argument on the Motion. Dorian Vandenberg-Rodes, Esq., and

Ricardo Jose Prieto, Esq., appeared at the hearing on behalf of Plaintiffs;

Nathan D. Chapman, Esq., and Christine Elaine Reinhard, Esq., appeared at the

hearing on behalf of Defendant Time Warner Cable ("TWC"). After reviewing the

Motion and the supporting and opposing memoranda, and considering the parties'

1

arguments at the hearing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification of a Collective Action and Authorization for Notice.  (Dkt. # 4.)

<u>BACKGROUND</u>

The instant litigation arises out of Plaintiffs' employment by TWC as inbound sales agents in San Antonio, Texas.  ("Garcia Decl.," Dkt. # 9, Ex. A ¶ 2; "Pontious Decl.," Dkt. # 9, Ex. B ¶ 2; "Hughes Decl.," Dkt. # 9, Ex. E ¶ 2.) Inbound sales agents are primarily responsible for selling and/or "up-selling" cable service to customers who call TWC's call center.  (Garcia Decl. ¶ 3; Pontious Decl. ¶ 3; Hughes Decl. ¶ 3.)  Each of the named Plaintiffs worked eight hours per day with a one-hour unpaid lunch period, and was paid $10 per hour plus commissions based on the number of sales made.  Specifically, they received a percentage of the sales they made, which varied based on factors such as how closely they adhered to their eight-hour schedules, "up-sales" generated, and new customer sales generated.  (Garcia Decl. ¶¶ 4, 6; Pontious Decl. ¶¶ 4, 6; Hughes Decl. ¶¶ 4, 6.)

Plaintiffs allege that in addition to taking customer calls, they were required to perform "non-sales work" such as documenting orders and customer accounts, following up with customers and addressing issues related to orders, ensuring that accounts were properly credited, and staying abreast of current TWC products, services, promotions, and policies.  (Garcia Decl. ¶ 5; Pontious Decl. ¶ 5;

Hughes Decl. ¶ 5.)  They further allege that because they were effectively required to spend the entirety of their shifts on the phone, they spent a significant amount of time each day working "off the clock" and without pay so that they could complete the required "non-sales work."  (Garcia Decl. ¶¶ 6–7; Pontious Decl. ¶¶ 6–7; Hughes Decl. ¶¶ 6–7.)  Garcia states that she worked an average of six unpaid hours per week (Garcia Decl. ¶ 8), while Pontious and Hughes state that they worked an average of seven unpaid hours per week (Pontious Decl. ¶ 8; Hughes Decl. ¶ 8).  Plaintiffs allege that their supervisors were aware that they were working off the clock, but that they were repeatedly instructed to stay on the phone the entire time they were on the clock and that their "non-sales work" had to be performed off the clock.  (Garcia Decl. ¶ 9; Pontious Decl. ¶ 9; Hughes Decl. ¶ 9.)

On November 6, 2014, Plaintiffs initiated this lawsuit by filing a collective action complaint.  (Dkt. # 1.)  The complaint alleges (1) that TWC's practice of failing to pay Plaintiffs the time-and-a-half rate for hours in excess of forty per work week violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and (2) that TWC's practice of failing to pay Plaintiffs at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206.  (Id. ¶¶ 74–79.)  On December 10, 2014, Plaintiffs filed the instant Motion for Conditional Certification of a Collective Action and Authorization for Notice.  (Dkt. # 9.)  On January 9,

2015, TWC filed a Response in Opposition.  (Dkt. # 16.)  On January 15, 2015,

Plaintiffs filed a Reply.  (Dkt. # 19.)

LEGAL STANDARD

An employee can bring an action for violating the minimum wage and

overtime provisions of the FLSA, either individually or as a collective action on

behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).

Because the FLSA requires employee-class members to affirmatively opt in, the

plaintiff can seek "conditional class certification" from the court, which permits

the plaintiff to "send[] [a] court-approved written notice to employees, who in turn

become parties to a collective action only by filing written consent with the court."

Genesis Healthcare Corp. v. Symczk, 133 S. Ct. 1523, 1527 (2013) (citations

omitted).

Although the Fifth Circuit has declined to adopt a specific test to

determine when a court should conditionally certify a class or grant a notice in a

§ 216(b) action, the majority of courts within the Fifth Circuit have adopted the

approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).

Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (noting

acceptable approaches include either the Lusardi approach or the "spurious class

action" approach set forth in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo.

1990)), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90

4

(2003); <u>Vanzzini v. Action Meat Distribs., Inc.</u>, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (following <u>Lusardi</u>); <u>Mateos v. Select Energy Servs., LLC</u>, 997 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); <u>Tice v. AOC Senior Home Health Corp.</u>, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); <u>Marshall v. Eyemasters of Tex., Ltd.</u>, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The <u>Lusardi</u> approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage. <u>Mooney</u>, 54 F.3d at 1213–14. At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010). If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit. <u>Id.</u> Once plaintiffs have opted in and discovery is largely complete, the defendant can file a decertification motion, asking the court to re-assesses whether the claimants are similarly situated. <u>Mooney</u>, 54 F.3d at 1214. At that point, the court can fully evaluate the merits of class certification and can choose to decertify the class. <u>Id.</u>

DISCUSSION

Plaintiffs ask the Court to conditionally certify this case as a collective action under 29 U.S.C. § 216(b); order TWC to produce a list of all inbound sales agents employed during the last three years at its San Antonio, Texas location; and issue notice subject to the procedure and methods laid out in their Motion.  (Dkt. # 1 at 4.)  TWC has elected not to challenge Plaintiffs' assertion that they have met the "lenient" standard for conditional certification under the FLSA.  (Dkt. # 16 at 1.)  However, TWC objects to Plaintiffs' request for a "gag order" on TWC; to the contact information requested by Plaintiffs; and to Plaintiffs' proposals regarding the manner, timing, and content of notice to putative class members.  (Id.)  The Court addresses each of TWC's objections in turn.

I.      Request for "Gag Order"

TWC first objects to Plaintiffs' request for a "gag order," included in the proposed order granting Plaintiffs' Motion (Dkt. # 9-9).  The proposed order includes the following language:

> Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former inbound sales agent about any matters which touch or concern the settlement of any outstanding wage claims or other matters related to this suit during the opt-in period.  Defendant shall so instruct all of its supervisors.  This order shall not restrict Defendant from discussing with any current inbound sales agent matters that arise in the normal course of business.

6

(Dkt. # 9-9 at 3.)  TWC argues that this language prohibits TWC and its counsel

from communicating with putative class members regarding this litigation during

the opt-in period, and contends that such a restraint on contact is unjustified in this

case.  (Dkt. # 16 at 2, 7.)  Plaintiffs state that they only request that TWC be

prohibited from speaking with class members regarding this lawsuit, settlement, or

any other matters which touch or concern this case.  (Dkt. # 19 at 2.)  Plaintiffs

argue that such a prohibition is necessary to avoid misinformation, to allow notice

to come from a single source, and to avoid the potential for chilling participation or

retaliation.  (Id.)

        Because class actions present special opportunities for abuse, courts

have broad authority to govern the conduct of both counsel and parties in FLSA

collective actions.  Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003)

(citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989)).  This

authority includes the power to restrict communication between a party and absent

class members; however, the court's discretion in this area is "not unlimited."  Gulf

Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).  The Supreme Court has explained

that "an order limiting communications between parties and potential class

members should be based on a clear record and specific findings that reflect a

weighing of the need for a limitation and the potential interference with the rights

of the parties."  Id. at 101.  Furthermore, district courts may not restrict

communication "without a specific record showing by the moving party of the particular abuses by which it is threatened." Id. at 102 (quoting Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977).[1]  Since Gulf Oil, courts have developed a two-step standard for determining when a party's communication to putative class members may be restricted.  The party moving to limit communication must make two showings: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation." Bass v. Pjcomm Acquisition Corp., No. 09-cv-01614-REB-MEH, 2011 WL 902022, at *3 (D. Colo. Mar. 14, 2011); Ojeda-Sanchez v. Bland Farms, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009); Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc., 214 F.R.D. 696, 697–98 (S.D. Ala. 2003).

Here, Plaintiffs have not met their burden of showing that an abusive form of communication has occurred or is threatened to occur such that limiting communication is warranted.  Plaintiffs simply speculate that the prohibitive language is necessary to avoid potential confusion and a possible chilling effect on putative class members.  (Dkt. # 19 at 2.)  "The 'mere possibility of abuses' does not justify routine adoption of a communications ban." Vogt v. Tex. Instruments

---

[1] Although Gulf Oil dealt with the Rule 23 class action context, the same concerns and considerations apply to § 216(b) FLSA cases.  Hoffman-La Roche, 493 U.S. at 171.

Inc., No. 3:05-CV-2244-L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006)

(citing Gulf Oil, 452 U.S. at 102).  "While actual harm need not be proved to

justify an order limiting class contacts, the movant must at least present evidence

that a potential likelihood for serious abuse exists."  Id. (citation omitted).

Plaintiffs' speculation, which is general in nature and not tied in any manner to this

particular case or this particular defendant, is insufficient to allow the Court to

make the specific findings required to support a limitation on communication.  The

Court thus finds that Plaintiffs' proposed limiting language is inappropriate at this

time.

## II.    Requested Contact Information

Next, TWC objects to the breadth of contact information for putative

class members requested by Plaintiffs.  Plaintiffs request that TWC be ordered to

produce the names, all known addresses, all phone numbers, dates of birth, all

known email addresses (both work and personal), Social Security numbers, and

dates of employment for all potential class members employed from three years

prior to the filing of this lawsuit to the present.  (Dkt. # 9 at 10–11.)  TWC argues

that Plaintiffs' request for Social Security numbers, dates of birth, phone numbers,

and email addresses should be denied because of privacy concerns, including the

potential for identity theft.  (Dkt. # 16 at 10.)  TWC contends that notice by regular

mail to putative class members' last known address is sufficient in this case.  (Id.)

The Court finds that the extensive disclosures requested by Plaintiffs are inappropriate at this stage of the case.  "The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"  Behnken v. Luminant Min. Co., LLC, 997 F. Supp. 2d 511, 523 (N.D. Tex. 2014) (quoting Hoffman-La Roche, 498 U.S. at 170).  Thus, the Court's aim is to ensure that putative class members actually receive notice in a timely manner.  While there is not a great deal of uniformity with respect to the types of information courts generally order defendants to produce, many have taken the view that putative class members' names and addresses are sufficient to ensure that notice is received.[2]  E.g., Altiep v. Food Safety Net Servs., Ltd., No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) (denying plaintiffs' request for telephone numbers and email addresses because "Plaintiffs have shown no reason that sending a letter to a potential plaintiff's last known

---

[2] With respect to Social Security numbers in particular, privacy and security concerns outweigh the interest in ensuring that notice is received at this stage.  See White v. Integrated Elec. Techs., Inc., No. 12-359, 2013 WL 2903070, at *10 (E.D. La. June 13, 2013) (denying plaintiffs' request for production of the last four digits of Social Security numbers because plaintiffs were adequately equipped to notify all potential class members and privacy concerns outweighed the benefits of disclosure); Humphries v. Stream Int'l, Inc., No. 3:03-CV-1682-D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb 13, 2004) (declining to require defendants to produce telephone numbers, dates of birth, and social security numbers because "[a]ny need for the compelled disclosure of such data is outweighed by the privacy interests of these current and former workers").

address would provide inadequate notice"); <u>Aguayo v. Bassam Odeh, Inc.</u>, No.

3:13-CV-2951-B, 2014 WL 737314, at *6 (N.D. Tex. Feb. 26, 2014) (limiting

production to putative class members' names, last known addresses, and dates of

employment); <u>Page v. Nova Healthcare Mgmt., LLP</u>, No. H-12-2093, 2013 WL

4782749, at *7 (S.D. Tex. Sept. 6, 2013) (denying plaintiffs' request for telephone

numbers "because of the highly private and sensitive nature of this information"

and limiting production to potential plaintiffs' names and last known mailing

addresses).

   For those putative class members whose notices are returned as

undeliverable, Plaintiffs may request the production of additional information to

assist them in reaching those individuals.  <u>See Aguayo</u>, 2014 WL 737314, at *6

(ordering defendants to produce additional information for individuals whose mail

was returned as undeliverable); <u>Heeg v. Adams Harris, Inc.</u>, 907 F. Supp. 2d 856,

865–66 (S.D. Tex. 2012) (noting that plaintiffs' counsel could request additional

information for putative class members whose notices were returned as

undeliverable).

III. <u>Proposed Notice to Putative Class Members</u>

   Finally, TWC raises various objections to the content of Plaintiffs'

proposed notice and opt-in forms.  Plaintiffs propose to send notice to putative

class members via regular mail, email, and posting at TWC's place of business,

and they provide the Court with a proposed notice and opt-in form which they propose to send to potential class members.  (Dkt. # 9 at 10; Exs. F–G.)  TWC raises objections both to Plaintiffs' proposed methods of sending notice and to the content of the notice and opt-in forms themselves.  (Dkt. # 16 at 9–17.)  The Court addresses each of TWC's objections in turn.

      A.   <u>Method of Sending Notice</u>

      Plaintiffs propose to send notice and consent forms by first class mail and electronic mail to all potential opt-ins employed at any time during the three-year period before this lawsuit was filed to the present.  (Dkt. # 9 at 11–12.)  Plaintiffs also request that notice be prominently posted at TWC's place of business and that a copy of the proposed notice be included with each putative class member's paycheck.  (<u>Id.</u> at 15.)  Finally, Plaintiffs request that a second notice be sent out thirty days before the opt-in deadline passes, but only to those individuals who have not opted in to the lawsuit.  (<u>Id.</u>)

      TWC raises three objections to Plaintiffs' proposed method of sending notice.  First, TWC argues that Plaintiffs' request to send notice via email should be denied as misleading, disruptive, and unnecessary.  (Dkt. # 16 at 11.)  Second, TWC argues that Plaintiffs' request to use a "click-through" consent form in the email notice should be denied because it is susceptible to fraud and discourages thoughtful, informed participation.  (<u>Id.</u> at 12.)  Last, TWC argues that Plaintiffs'

request for posting, reminder notices, and paycheck enclosures should be denied.
(Id. at 13.)  Because the Court is not ordering production of putative class
members' email addresses at this time, the Court does not address TWC's first two
objections.

        TWC argues that posting notice in the workplace, enclosing notice in
employee paychecks, and reminder postcards are inappropriate absent a specific
showing that traditional notice is insufficient to provide timely, accurate notice.
(Id.)  Posting notice in a workplace is often used to inform employees of their
rights in labor disputes, Hoffman Plastic Compounds, Inc. v. NLRB, 525 U.S. 137,
152 (2002), and has been approved as an appropriate form of notice in FLSA
cases.  E.g, Pacheco v. Aldeeb, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *9
(W.D. Tex. Mar. 31, 2015); Barajas v. Acosta, No. H-11-3862, 2012 WL 1952261,
at *4 (S.D. Tex. May 30, 2012).  Furthermore, the Court finds that posting notice
in TWC's workplace is not unduly burdensome.  The call center is not open to the
public, so there is no danger of reputational harm or other adverse impact on
TWC's business.  The Court also finds that posting notice in the workplace is a
simple and effective way of ensuring that notice reaches all of the putative class
members currently employed by TWC, and therefore approves notice by posting.[3]

_____

[3] The Court notes that at the hearing, counsel for TWC represented that TWC
would agree to notice by posting in lieu of being ordered to produce putative class

However, the Court finds that sending notice forms along with employee paychecks is both redundant and unnecessary, and thus declines Plaintiffs' request to enclose notice in employees' paychecks.

There is a split among district courts as to whether reminder notices to putative class members are proper in FLSA actions. See Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) (noting that some courts have denied requests for reminder notices on the grounds that reminders are unnecessary and could be interpreted as encouragement by the court to join the lawsuit, while others have recognized that a reminder is appropriate when sent by plaintiffs' counsel and not the court). The Guzelgurgenli court ultimately denied the plaintiffs' request because they did not identify any reason why a reminder notice was necessary under the particular circumstances of the case. Id. at 358. Likewise, Plaintiffs here have not identified any particular reason why a reminder notice is necessary to ensure sufficient notice under the circumstances of this case. The Court thus concludes that a reminder notice is inappropriate in this instance. See also In re Wells Fargo, 2013 WL 2180014, at *3 (denying plaintiffs' request for a reminder notice as unnecessary and inappropriate).

---

members' "sensitive, personal information" such as Social Security numbers, dates of birth, phone numbers, and email addresses.

B.     <u>Content of Notice</u>

TWC also objects to the content of Plaintiffs' proposed notice on several grounds.  First, TWC argues that the notice incorrectly states the applicable limitations period and must specify the deadline for filing consent forms.  (Dkt. # 16 at 14.)  Second, TWC claims that the notice should advise putative class members of their discovery obligations.  (<u>Id.</u> at 15.)  Third, TWC asserts that the notice should inform putative class members that they may be responsible for costs and expenses.  (<u>Id.</u>)  Fourth, TWC argues that the notice should include contact information for both parties' counsel.  (<u>Id.</u> at 16.)  Finally, TWC argues that the notice should advise putative class members of their right to retain separate counsel.  (<u>Id.</u>)  The Court addresses each objection below.

1.     <u>Limitations Period and Consent Deadline</u>

Plaintiffs request that notice be sent to inbound sales agents employed by TWC from November 6, 2011 to the present.  (Dkt. # 9, Ex. F at 1.)  Thus, Plaintiffs appear to argue that the proper limitations period runs from three years prior to the date on which this action was commenced to the present.  A cause of action arising out of a willful violation of the FLSA "may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form with the court.  29 U.S.C. § 256(b); <u>Quintanilla v. A & R</u>

15

Demolition, Inc., No. Civ.A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005).  Therefore, the limitations period in this case should confine class certification to inbound sales agents who worked for TWC in the three years prior to the date on which the Court conditionally certifies the classes—in other words, three years prior to the date of this Order.  See Altiep, 2014 WL 4081213, at *5; Watson v. Travis Software Corp., No. H-07-4104, 2008 WL 5068806, at *8 (S.D. Tex. Nov. 21, 2008); Quintanilla, 2005 WL 2095104, at *16.  Furthermore, each potential plaintiff will be required to opt in within three years of employment as an inbound sales agent.  Altiep, 2014 WL 4081213, at *5.  The notice must accurately reflect both of these dates.

### 2.   Discovery Obligations

Second, TWC argues that the notice should advise putative class members that they may be required to participate in discovery, and that they may be required to travel to San Antonio to fulfill this obligation.  (Dkt. # 16 at 15.) Other courts have noted that such an advisory is routinely approved.  E.g., Behnken, 997 F. Supp. 2d at 524; Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).  The notice must include an advisory regarding putative class members' potential discovery obligations.

3.      Responsibility for Costs and Expenses

Third, TWC argues that the notice should advise potential plaintiffs that if they do not prevail, they may be responsible for costs and expenses. (Dkt. # 16 at 15.) As the Behnken court noted, "potential opt-in plaintiffs may be required to pay taxable court costs if the judgment is unfavorable to them." Behnken, 997 F. Supp. 2d at 524. Without such an advisory, "the proposed notice form is not completely accurate as to the potential liabilities for those who join the lawsuit." Id. Furthermore, the advisory is necessary for potential plaintiffs to make an informed decision about whether to opt in to the lawsuit. Id. Plaintiffs' proposed notice includes the language, "If the inbound sales agents lose, you will receive nothing, but you will not have to pay anything either." (Dkt. # 9, Ex. F at 1.) This language is misleading and inaccurate and must be stricken from the notice. Furthermore, the notice must inform potential plaintiffs that they could be liable for their proportional share of taxable court costs if they do not prevail in this case.

4.      Defense Counsel's Contact Information

Fourth, TWC argues that the notice should provide complete contact information for both parties' counsel. (Dkt. # 16 at 16.) Again, there is a split among district courts as to whether the inclusion of defense counsel's contact information is appropriate. Some have stated that "there is no basis in logic" for

17

the request to include defense counsel's contact information, while others note that

"FLSA opt-in notices often contain the names of all counsel."  <u>Compare</u> <u>Behnken</u>,

997 F. Supp. at 525; <u>Gambo v. Lucent Techs., Inc.</u>, No. 05 C 3701, 2005 WL

3542485, at *7 (N.D. Ill. May 10, 2010), <u>with</u> <u>Gonzalez v. Ridgewood</u>

<u>Landscaping, Inc.</u>, No. H-09-2992, 2010 WL 1903602, at *8 (S.D. Tex. May 10,

2010).

       Courts declining to order the inclusion of defense counsel's contact

information generally cite ethical concerns about post-certification communication

between defense counsel and class members.  Generally, courts agree that "[o]nce

a class has been certified, the rules governing communications [with class

members] apply as though each class member is a client of the class counsel."

<u>Harris v. Vector Mktg. Corp.</u>, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (citing

Manual of Complex Litig. § 21.33 at 300 (4th ed. 2004)).  As the <u>Harris</u> court

noted, "[i]ncluding contact information for defense counsel in the class notice risks

violation of ethical rules and inadvertent inquiries, thus engendering needless

confusion." <u>Id.</u>  The Court finds this reasoning persuasive, and finds that inclusion

of defense counsel's contact information is unwarranted.  <u>See also</u> <u>McCloud v.</u>

<u>McClinton Energy Grp., LLC</u>, No. 7:14-CV-120, 2015 WL 737024, at *10 (W.D.

Tex. Feb. 20, 2015).

5.     Right to Retain Separate Counsel

Last, TWC argues that the notice should include information regarding putative class members' right to retain counsel of their own choosing. (Dkt. # 16 at 16.)  TWC asserts that without this advisory, the notice gives the inaccurate impression that the sole avenue for class members to pursue their claims is through Plaintiffs' counsel.  (Id. at 17.)  The Court agrees with TWC, and finds that the notice must advise putative class members of their right to retain separate counsel and pursue their rights independently from the class.  See, e.g., Lee v. Veolia ES Indus. Servs., Inc., No. 1:12-CV-136, 2013 WL 2298216, at *20 (E.D. Tex. May 23, 2013); Gambo, 2005 WL 3542485, at *7.

CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification of a Collective Action and Authorization for Notice.  (Dkt. # 4.)  TWC is **ORDERED** to produce, in a usable electronic format, the names, last known addresses, and dates of employment for all putative class members within ten days of the date of this Order.  For those individuals whose notices are returned as undeliverable, Plaintiffs may request additional information from TWC.  The parties are further **ORDERED** to confer and prepare agreed-upon notice and consent forms

19

consistent with this Order.  The parties shall jointly submit such forms to the Court

by **Friday, May 1, 2015.**

       **IT IS SO ORDERED.**

       **DATED:** San Antonio, Texas, April 16, 2015.

_____

David Alan Ezra
Senior United States Distict Judge